## Case No. 10,666.

### PAGE v. RIVES.

[1 Hughes, 297.] [1]

Circuit Court, W. D. Virginia. March, 1877.

INTERNAL REVENUE — LEGACIES — DISTRIBUTIVE SHARE—MONEY RECEIVED UNDER COMPROMISE WITH EXECUTOR.

Where sums of money are received by claimants under a deceased person's will, under a compromise contract made by them with the executor of the will, sanctioned by a court having jurisdiction of the will and of the estate devised. *Held,* that the sums of money so received do not fall within the category of "legacies" or "distributive shares" in intestates' estates, which are subjected to an internal revenue tax by the United States.

This was an action of assumpsit, and was first brought in the state circuit court of Lynchburg. It was removed thence by certiorari to the circuit court of the United States, sitting at Lynchburg. It was brought for the recovery of a tax illegally assessed against the plaintiff [N. M. Page, executor of Samuel Miller] by the defendant [J. H. Rives] as United States collector of internal revenue, and paid by the plaintiff under protest. The plaintiff was assessed by the United States assessor of the Fifth Virginia district, on the 22d day of October, 1874, with an internal revenue tax of $18,000, being six per cent. on $300,000 paid to Robert W. Davidson, James Davidson, John Davidson, Samuel M. Davidson, and Bennett M. Davidson, the illegitimate children of his testator, Samuel Miller, by Mary D. Davidson, in pursuance of a compromise made with them by those representing the charity school established by the twenty-fifth clause of the will of his testator, which tax the plaintiff paid to the defendant, on the 10th day of November, 1874, under protest in writing. The plaintiff was also assessed at the same time, by the same assessor, with an internal revenue tax of $2000, being four per cent. on the sum of $50,000 paid to Jesse Miller, in pursuance of a compromise made with him by the same parties, which tax the plaintiff paid to the defendant, on the 10th day of November, 1874, under protest in writing. Both taxes were paid to avoid distraint or other forcible process to collect the same. January 11th, 1875, the plaintiff duly made claim upon the commissioner of internal revenue, for the refunding of said taxes, for the reason that the sum of $300,000 and the sum of $50,000, on

which said assessments were made, were not, nor was either of them, nor any part of either, paid to said parties, or either of them, as a legacy under the will of Samuel Miller, deceased, nor was it paid to them, or either of them as a distributive share in his estate under the intestate laws of Virginia, and demanding to have the said sums of $18,000 and $2000 refunded to him. March 10th, 1875, the commissioner of internal revenue, after holding it under advisement, rejected said appeal for the reason "that the taxes were due and legally assessed and collected." Before either assessment was made, the plaintiff informed the collector, who reported the assessments, that in his opinion the tax was illegal, and that there was no authority in law to collect it, and filed with him a protest in writing, insisting on their illegality, and before the assessments were made he filed with the commissioner of internal revenue a protest in writing insisting on their illegality and assigning the reasons therefor.

In March, 1869, Samuel Miller, a resident of the county of Campbell, Virginia, died, leaving a will dated in April, 1859, which was duly admitted to probate. He was never married, and left no lawful issue. But the five above-named Davidsons were recognized by him as his illegitimate children. Soon after the probate of said will, a suit was instituted by said Jesse Miller against the executor of Samuel Miller and others, in the circuit court for the city of Richmond, under the style of Miller v. Page [6 Call, 28], alleging that said twenty-fifth clause of the will was invalid, and that the whole subject embraced in that clause had vested in him. The said Jesse Miller proved in said cause that he was sole heir at law and next of kin of said testator. A compromise was effected with said Jesse Miller by which he agreed to accept $50,000 in full of his said claim, and to assign and transfer to the board of the literary fund for the benefit of the same parties and upon the same trust mentioned and declared in the twenty-fifth clause of said will, all right, title, interest, and claim whatsoever, which he has or may have as heir at law or next of kin of said Samuel Miller, whether now existing or hereafter to arise, and whether capable of being asserted in said suit or otherwise. This compromise was approved by the court, and was carried into effect by proper decrees entered in said cause, and Jesse Miller being paid said sum out of the residuum bequeathed as aforesaid to said charity school, executed and delivered a deed for the benefit of the said school as provided by said compromise, and said suit was then dismissed.

The plaintiff in this suit then filed a bill in said court asking it to advise and direct him in the administration of said estate. All persons interested were made parties, and among them the said illegitimate children of the testator. After said suit was matured

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

and set for hearing, the said illegitimate children filed a cross-bill, charging that the said twenty-fifth clause of the will was invalid. But if valid, that the contingency had happened by which the said school was defeated and prevented from being carried out, and that the whole subject devised for the purpose had vesture in them under the limitation in their favor. Proper answers were filed to the cross-bill, and among them an answer on behalf of said school, denying that the contingency had happened by which the establishment of said school had been defeated and prevented, and insisting that said clause was valid, and claiming the bequest on behalf of said school. The causes on the original and cross-bills were regularly matured as to all parties, and being heard, the court decided that said clause was not valid under chapter 80 of the Code of 1860, but was valid by reason of the authority given to the executor to petition the legislature for the passage of any law which might be necessary more effectually to carry out the object of the testator in the establishment of said school; and that it was an executory devise contingent upon the passage of such a law, and directed the executor to apply to the legislature to procure its passage.

From this decision an appeal was taken on behalf of the school, and afterwards by the executor, to the supreme court of the state. Whilst these appeals were pending, and when they were about to be heard, certain persons residing in Kentucky filed their bill in the said circuit court against the plaintiff in this suit and others, alleging that they were heirs at law and next of kin of Samuel Miller, that said twenty-fifth clause was invalid, and that they were entitled to the whole subject bequeathed by that clause. This cause was regularly matured as to all parties, and heard, when the court decreed that said twenty-fifth clause was valid against the heirs of Samuel Miller, and dismissed their bills. From this decision they appealed to the supreme court of appeals, where the case was docketed under the style of Kinnaird v. Miller's Ex'r [25 Grat. 107]. About this time a proposition was made on the part of these illegitimate children for a conference, with a view to a compromise. After a protracted negotiation, a plan of compromise was agreed on between those representing the school and the said illegitimate children. It was agreed that the school should pay said children the sum of $300,000, and release to them the reversions in the special bequest to the said children to which the school was entitled in the event if either of them should die without issue; and this was to be accepted and received by said children "in full satisfaction of all right, title, interest, and claim whatsoever, which they or either of them have, or may be entitled to, under the said twenty-fifth clause, whether now existing or at any time or times hereafter to arise in any manner or upon any contingency

whatsoever." As some of these children were infants, it was deemed advisable to submit the compromise to the said circuit court for approval. It was accordingly stipulated that the plan of compromise should be submitted to the court, and if approved and ratified by the court, then a petition was to be presented to the legislature, in which the said children were to unite with the executor for an act of incorporation to establish said school upon a safe and permanent footing, according to the scheme of said twenty-fifth clause, and to authorize the execution of a deed releasing said reversions, and authorizing a conveyance by said children to and for the charitable uses and purposes prescribed by the twenty-fifth clause of said will, of all their said rights, claims and interests now existing, or hereafter in any manner or upon any contingency to arise or accrue in and to the subject bequeathed by said twenty-fifth clause. The compromise was dated 11th of February, 1874, and the decree ratifying it was entered the 13th of February, 1874.

These successive steps were taken to give effect to said plan of compromise, and after it was signed by all the parties it was submitted to the court, and by it was ratified and approved by a proper decree to carry out its several covenants and stipulations. After this was done, the executor presented to the legislature a petition, in which the said children united, praying for an act of incorporation for said school, and for authority for all parties to execute the necessary deeds required by the plan of compromise. A copy of the plan of compromise and of said decree accompanied the petition. The prayer of the petition was granted, and the legislature passed an act to give effect to the compromise and to establish said school according to the scheme prescribed by the testator in said clause of his will. It conferred the power to execute the necessary deeds to carry out the compromise, and granted a charter of incorporation to the school by the name and style of the "Miller Manual Labor School of Albemarle." The school was thus placed on a permanent and enduring basis, and the legislature thus surrendered the power over the school which it could exercise under the eighth section of chapter 80 of the Code, and the corporation thus chartered became entitled to take and hold the legacy bequeathed by the twenty-fifth clause of said will for the uses and purposes of said school as declared therein.

After the passage of this act of incorporation, the appeal of the Kentucky heirs was argued in the supreme court of the state, and it decided that the said twenty-fifth clause was valid against the heirs at law of Samuel Miller, and affirmed the decree of the circuit court dismissing their bill. Immediately after this decision was entered, the two appeals taken to the decision of the circuit court in the case of the cross-bill filed by said illegitimate children, were dismissed by

an order entered by the appellate court. The dismissal of these two appeals affirmed the decree of the circuit court, which decree dismissed the cross-bill of the Davidsons, and decided that the said school was entitled to the whole legacy bequeathed by the twenty-fifth clause as an executory devise.

By the third clause in the plan of compromise, these children were not entitled to this sum of $300,000 until after these several steps were performed, to wit, the act of incorporation was to be procured, the deeds in pursuance of it made, the decision of the supreme court of Virginia, that the twenty-fifth clause was valid against the heirs at law of Samuel Miller, rendered, and the two appeals dismissed, and "thereupon the said sum of $300,000 shall be paid to the Davidsons." These several conditions were performed, and then the time arrived to pay the said sum to said children, and then the board of education, which by the charter holds the stocks and bonds constituting this legacy, requested the judge of the county court of Albemarle to select the stocks and securities to raise said sum, looking to the best interest of the school in making the selection. This was done by him, and the said sum of $300,000 was paid by the executor to these illegitimate children under and pursuant to the decrees in these cases, and all the deeds required by the plan of compromise and the act of the legislature have been duly executed and delivered, and properly recorded.

Samuel Miller in his lifetime treated these Davidsons as his children. They were born and reared on his farm within a short distance of his dwelling. He maintained and educated them. He gave one of them $10,000 in his lifetime. To two others he gave a valuable farm. He consulted Dr. Terrell about the provision he should make for them in his will, and by his will gave each of them about $35,000, with this limitation over in the twenty-fifth clause by which he gave them, in a certain contingency, the whole subject bequeathed in that clause. He gave to their mother, Mary D. Davidson, $15,000 in his lifetime, and a like sum by his will. The sum agreed to be paid Jesse Miller has been paid, and there is nothing in the hands of the executor belonging to him. He has never claimed as legatee under the twenty-fifth clause. In his bill he claimed that that clause was invalid under the laws, that as to the subject thereby bequeathed Samuel Miller died intestate, and that he was entitled to it as heir at law and next of kin.

The counsel for the executor contended that the subject taxed must be either "a distributive share in an intestate's estate," or "a legacy," under the will of Miller; that the sum of $50,000 paid to Jesse Miller was paid as a compromise; that he never claimed a "legacy" under the twenty-fifth clause of the will, but insisted that that clause was void, and that he was entitled to the whole subject bequeathed as heir at law and next of kin,

and that as there was no such legacy, the tax on the $50,000 was not a tax on a "legacy," and was therefore illegally imposed. They further contended that the $50,000 paid to Jesse Miller was not a "distributive share" in the estate of the testator, because the court of appeals, in the case of Kinnaird v. Miller's Ex'r, 25 Grat. 107, decided that the twenty-fifth clause was valid against the heir and next of kin, and that he died intestate, and therefore that the $50,000 was not paid to Jesse Miller either as a "legacy" or as a "distributive share," and the tax imposed thereon was illegal and should be refunded.

The counsel for the executor further insisted that the tax on the $300,000 paid the Davidsons was illegal. This sum was paid them as a compromise. They had instituted a suit claiming that the contingency, mentioned in the twenty-fifth clause of the will, by which the subject bequeathed in that clause was limited over to them, had happened, and that they were entitled to it. The twenty-fifth clause of the will, after establishing the charity school, and bequeathing to it the property therein specified, contained this clause under which the Davidsons claimed: "Should the legislature of this commonwealth pass any act or law which will defeat or prevent the carrying out of the objects or purposes of this clause, as hereinbefore declared and set forth, then, and in that event, I do hereby give, devise, and bequeath the trust fund created by that clause, or so much thereof as may remain unappropriated, to the children of Mary D. Davidson (hereinbefore named) and their heirs forever."

It was contended by the counsel for the executor that the estate taken by the Davidsons was an executory devise; being a fee limited upon a fee, it can only take effect as an executory devise. Fearne, Item. 503; 3 Lomax, Dig. 280, 281. That the limitation in favor of the Davidsons was void for remoteness. To constitute a good executory devise, the contingency must happen in a reasonable time, and that has always been held to be a life or lives in living, and twenty-one years afterwards. The rule goes further and holds that it is "not sufficient that the limitation be capable of taking effect within the prescribed period, it must be so framed as ex necessitate to take effect, if at all, within that time." 4 Ves. 227; 3 Gray, 152; 2 Rob. (Va.) 424.

The devise by the twenty-fifth clause to the board of the literary fund for the school is valid, under chapter 80 of the Virginia Code of 1860. That the board took a vested legal title, and that the legislature cannot divest the title, except when the will is made and takes effect under that chapter. The legislature reserves the right, under the 8th section of that chapter, "to repeal or suspend the authority thereby given" to make a will "at any time," and thus pass a "law that will defeat or prevent the carrying out of the objects and purposes of this clause." By the express terms of this chapter the legislature may pass such a law

"at any time," however remote. There is no limit in point of time within which the legislature may exercise this reserved right to pass a law that will "defeat or prevent" this clause. It is indefinite as to time. It may pass such a law a thousand years after the school has been in operation; and as the limitation in favor of the Davidsons is on the passage of such a law by the legislature, it is too remote, and therefore void. It is a limitation to take effect beyond the period prescribed by the rule against perpetuities within which an executory devise must vest.

The counsel for the executor further contended that if the devise to the board of the literary fund for the school did not take effect under chapter 80 of the Code, then it was good as an executory devise under that passage in the twenty-fifth clause of the will, which directs that "my executors are authorized and directed to petition the legislature of Virginia for the passage of any laws which may be requisite for more effectually carrying out the objects and purposes of this clause in regard to the school therein mentioned." Under this passage the devise to the board for the school is good as an executory devise, if not good under chapter 80, being limited on the passage of "any laws that may be requisite for more effectually carrying out the objects and purposes of the clause in regard to the school." Inglis v. Sailors' Snug Harbor, 3 Pet. [28 U. S. 99]; Literary Fund v. Dawson, 10 Leigh, 147. If this be so, then the estate of the Davidsons is an executory devise limited on a prior executory devise, and is therefore too remote and void, for whilst it is true that on every estate conferred by an executory devise another executory devise may be limited, yet it is equally well settled that, whenever one limitation of a devise is taken to be executory, all subsequent limitations must likewise be taken to be executory devises. As, then, the devise to the Davidsons is limited on a prior executory devise, which has the full period allowed by the rule against perpetuities, within which the contingency may happen, and the prior devise vest, it necessarily follows that a limitation which cannot vest until after that period is too remote. A life or lives in being at the death of the testator, and twenty-one years after, is the period allowed by this rule of law for the happening of the contingency on which the devise for the school is limited. This is the full period allowed by law to cover all limitations. Any limitation to happen beyond that is too remote. Now the devise to the school, if it be an executory devise, has the whole of this period within which the estate may vest. If the contingency happens at the last moment of time within that period it is good; and as the limitation to the Davidsons must happen after that period, it is too remote and void. So far from the devise to the Davidsons being so framed that it must ex necessitate take effect within that time, it is so framed that it must ex necessitate take effect beyond that time, and is therefore too remote and void.

In no view, then, are the Davidsons entitled to any legacy under this clause of the will, and the $300,000 paid them, not being paid as a "legacy," it is not liable to taxation. Nor was it paid to them as a "distributive share," because, being illegitimate children, they would be entitled to no interest in the estate of Samuel Miller if he had died intestate. But in fact he died testate, as the court of appeals decided in Kinnaird v. Miller's Ex'r. For these reasons the sum of $50,000 paid to Jesse Miller, and the sum of $300,000 paid to the Davidsons, were not paid either as a "distributive share" or as a "legacy," and hence the tax imposed on these two sums, and paid by the executor, was illegally assessed and collected, and should be refunded, and we ask a judgment for the sum of $20,000 so paid by the executor.

W. J. Robertson, John A. Meredith, and Mr. Craighill, for executor.

Warren S. Lurty, for the United States.

BOND, Circuit Judge, accepted the view of the law presented by the counsel for the executor, and judgment was given against the collector.